STATE OF CONNECTICUT *v.* FREDERICK F. PEIRSON

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 10-14712

Argued April 6—decided June 30, 1964

*Hyman Wilensky,* of New London, for the appellant (defendant).

*Walter H. Prescott,* prosecuting attorney, for the appellee (state).

LEVINE, J. The defendant was charged with operating a motor vehicle while his operator's license was under suspension in violation of § 14-215 of the General Statutes, and with being a second offender. Upon a trial to the jury on the former charge, he was found guilty and, upon the denial of his motion

to set aside the verdict, he pleaded guilty to the charge in the second part of the information that he was a second offender. His appeal is based on the court's denial of his motion to set aside the jury's verdict. The specific error assigned by the defendant is the court's action "in denying the defendant's motion to set aside the verdict as being against the weight of the evidence." Since this is a criminal proceeding, the assignment will be treated as though the issues were that the state had failed to prove the guilt of the defendant beyond a reasonable doubt on the evidence presented. *State* v. *Guilfoyle*, 109 Conn. 124, 126.

The jury could reasonably find that on October 10, 1963, at 11:20 p.m., the officer found the defendant in the driver's seat of the car with the motor running, on Bank Street in the city of New London; that traffic was moving in both directions on the street; that the defendant stopped the engine by turning the ignition key and, when asked for his license, stated that he did not have it on him. There was also seated in the car one Williams, who occupied the front right seat or passenger seat.

A person operates a motor vehicle within the meaning of the statute on operating while under the influence of intoxicating liquor (General Statutes § 14-227) when, in the vehicle, he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle. *State* v. *Swift*, 125 Conn. 399, 403. Since both §§ 14-215 and 14-227 use the word "operate," this statement of law is equally applicable to the offense with which the defendant is charged. "A car is naturally presumed to be under the 'control' of the person who is holding the steering wheel . . . ." *Reetz* v. *Mansfield*, 119 Conn. 563, 567. The engine was running—the

motive power was in motion—when the officer approached, so that the car was then being operated. The facts further indicated that the defendant was in the seat from which the car usually, customarily, and, of necessity, is operated. He also turned the motor off. Since a running engine means operating within the meaning of the statute, a turning off of the engine would be as much a part of operation. See *State* v. *Swift,* supra; *State* v. *Jones,* 2 Conn. Cir. Ct. 605, 606; *State* v. *Ray,* 4 N.J. Misc. 493, 496. The jury had a right to draw a reasonable inference that the defendant was operating the car from the facts shown—the defendant was in the operator's seat and therefore in control of the car and the motive power of the motor vehicle was in motion.

The defendant further claims that the state failed to present evidence that Bank Street was a public highway. "[A] suspension of a license suspends the permission of a person to operate on any public highway." *State* v. *Haight,* 2 Conn. Cir. Ct. 79, 82. Section 14-1 (14) of the General Statutes reads as follows: " 'Highway' includes any trunk line highway, state aid road or other public highway, road, street, avenue, alley, driveway, parkway or place, under the control of the state or any political subdivision thereof, dedicated, appropriated or opened to public travel or other use." The officer testified that he was assigned to patrol State, Bank and Tilly Streets, police beat No. 3, thereby indicating that the political subdivision, the municipality, had this area, Bank Street, under its control. The officer further testified that the railroad station was located on Bank Street, the defendant entered a restaurant which was located on Bank Street, the Capitol Theater is in the area, as are a taxi stand and numerous restaurants, and people were walking thereabouts. Cars were parked on both sides of the street, and traffic was moving in both directions. The restaurant

the defendant entered is about 150 feet from an intersection, and the officer had to cross the street and, in so doing, had to be careful of vehicular traffic. There was a police call box at the corner of State and Bank Streets. "Webster's New International Dictionary (2d Ed.) defines a highway as 'A main road or thoroughfare; hence, a road or way open to the use of the public.' We said in *Laufer* v. *Bridgeport Traction Co.*, 68 Conn. 475, 488 . . . : 'A highway is a public way open and free to any one who has occasion to pass along it on foot or with any kind of vehicle. In every highway the King and his subjects may pass and repass at pleasure.' The essential feature of a highway is that it is a way over which the public at large has the right to pass. See *Yale University* v. *New Haven,* 104 Conn. 610, 616 . . . ; *Newton* v. *New York, N.H. & H.R. Co.*, 72 Conn. 420, 426 . . . ; *Peck* v. *Smith,* 1 Conn. 103, 132. Accordingly, the term 'highway' is ordinarily used in contradistinction to a private way, over which only a limited number of persons have the right to pass." *Stavola* v. *Palmer,* 136 Conn. 670, 683.

Whether Bank Street was a highway was a question of fact and like all such questions may be proved by direct or circumstantial evidence and by inferences reasonably drawn from the competent facts established. From all the facts presented and established and the inferences which the jury were entitled to draw from them, there was ample evidence that Bank Street was a public highway, that it was under the control of the city of New London and that it was dedicated, appropriated or opened to public travel or other use.

There is no error.

In this opinion KOSICKI and KINMONTH, Js., concurred.