November 14, 2017

**Supreme Court**

No. 2016-113-C.A.
(P2/15-98A)

State                           :

v.                           :

Luke P. Peters.                           :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                                    :

v.                                    :

Luke P. Peters.                          :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**   This case came before the Supreme Court on October 3, 2017, pursuant to an order directing the parties to appear and show cause why the issues raised on appeal should not be summarily decided.  The State of Rhode Island appeals from the trial justice's decision granting a motion to dismiss several counts set forth in a criminal information against the defendant, Luke P. Peters (Peters or defendant), pursuant to Rule 9.1 of the Superior Court Rules of Criminal Procedure.  The state argues that the trial justice erred as a matter of law when he concluded that there was no probable cause to support the allegation that the defendant was operating a motor vehicle in violation of G.L. 1956 §§ 31-27-2.6, 31-27-1.2, and G.L. 1956 § 31-11-18.  After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that good cause has not been shown and that this case should be decided without further briefing or argument.  We vacate the judgment of the Superior Court.

**Facts and Travel**

The facts that follow are derived from the filings of the parties and are undisputed for the purposes of this appeal.  On August 6, 2014, after having purchased alcohol from a local liquor

store, defendant, along with John Willette (Willette) and two underage minors, Julia, and Kajia,[1] went to Willette's home and consumed the alcohol. At 11 p.m., the group decided to drive to Twin River Casino (the casino) in Lincoln, Rhode Island. While en route in Willette's vehicle, defendant, Julia, and Kajia continued to imbibe. After the parties arrived at the casino, they decided not to risk entering because Julia and Kajia were minors and not permitted within the facility. They returned to Willette's vehicle and continued to drink while parked in the casino's parking lot.

At around midnight, as they left the parking lot, Willette was at the wheel with Kajia in the front passenger seat; Julia was the rear passenger behind the driver, and defendant was sitting behind the front passenger. While traveling at a high rate of speed on the highway, an argument ensued among the parties. The defendant suddenly leaped from the rear seat and violently grabbed the steering wheel. He then turned the wheel, causing the vehicle to lose control, veer off the roadway, and roll over. A collision ensued, resulting in serious bodily injuries to Kajia and bodily injuries to Julia.

A criminal information was returned in Superior Court, charging defendant with assault with a dangerous weapon in violation of G.L. 1956 § 11-5-2 (count 1); driving under the influence of liquor resulting in serious bodily injury in violation of § 31-27-2.6 (count 2); driving so as to endanger resulting in serious bodily injury in violation of § 31-27-1.2 (count 3); driving so as to endanger resulting in nonserious bodily injury in violation of § 31-27-1.2 (count 4); contributing to the delinquency of a minor in violation of G.L. 1956 § 11-9-4 (count 5); and driving with a revoked license in violation of § 31-11-18 (count 6). The defendant's motion to dismiss counts 1 through 4, alleging insufficient probable cause to support the allegations, came

---

[1] We have declined to reveal the identities of the minors.

before a magistrate of the Superior Court. After the hearing, the magistrate denied the motion, finding that, although defendant was not "driving" the vehicle, there was probable cause to conclude that he was "operating" a motor vehicle at the time of the incident. Thereafter, defendant appealed the magistrate's decision to a justice of the Superior Court pursuant to G.L. 1956 § 8-2-39(e).[2]

On March 24, 2016, defendant's appeal was heard by a trial justice. The defendant argued that the magistrate erred when he concluded that probable cause existed to charge defendant with assault with a dangerous weapon, as well as operating a motor vehicle in violation of §§ 31-27-2.6 and 31-27-1.2. In his decision, the trial justice determined that tugging on the wheel does not amount to driving or operating for purposes of §§ 31-27-2.6 and 31-27-1.2.[3] Accordingly, the trial justice granted defendant's Rule 9.1 motion to dismiss counts 1 through 4 and count 6.[4]

---

[2] General Laws 1956 § 8-2-39(e) provides that any party aggrieved

> "by an order entered by the general magistrate shall be entitled to a review of the order by a justice of the relevant court. Unless otherwise provided in the rules of procedure of the court, such review shall be on the record and appellate in nature. The court shall, by rules of procedure, establish procedures for review of orders entered by a general magistrate, and for enforcement of contempt adjudications of a general magistrate."

[3] In his decision, the trial justice declared:

> "I don't think that the act of [defendant] tugging on that wheel was anything more than that. And if there's a statute * * * that makes it criminally negligent to interfere with or impede the operation of a motor vehicle, then charge [defendant] with it, but don't charge him with driving or operating a motor vehicle drunk or recklessly."

[4] The trial justice also determined that the evidence did not support a charge of assault with a dangerous weapon because defendant's actions could not satisfy the intent-to-cause-injury element of a conviction for assault with a dangerous weapon.

The state timely appealed to this Court.[5]  The state limits its appeal to the Superior Court's dismissal of counts 2, 3, 4, and 6 of the criminal information and has waived its appeal from the dismissal of count 1, assault with a dangerous weapon.

**Standard of Review**

**A**

**Rule 9.1 Motion to Dismiss**

In determining a motion to dismiss an information for lack of probable cause, "the trial justice must 'examine the information and the attached exhibits to determine whether there [is] probable cause to believe that the offense charged [was] committed and that [the accused] had committed it.'" *State v. Reed*, 764 A.2d 144, 146 (R.I. 2001) (quoting *State v. Aponte*, 649 A.2d 219, 222 (R.I. 1994)).  A trial justices' review of whether probable cause exists is limited to "the four corners of the information package." *State v. Young*, 941 A.2d 124, 128 (R.I. 2008).  It is well settled that the probable-cause standard applied to a Rule 9.1 motion to dismiss is identical to the traditional probable-cause standard to support an arrest.  *See Reed*, 674 A.2d at 146.  "[P]robable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to warrant a reasonable person to conclude that a crime has been committed and that the person to be arrested committed it." *Id.*  When ruling on a motion to dismiss, the trial justice must afford the state "the benefit of every reasonable inference in favor of finding probable cause." *Young*, 941 A.2d at 128 (quoting *State v. Jenison*, 442 A.2d 866, 875 (R.I. 1982)).  This Court's review of a decision on a motion to dismiss an information is limited to determining whether the

---

[5] On April 6, 2016, before an appeal to this Court, the state filed a motion to reconsider the dismissal pursuant to Rule 9.1 of the Superior Court Rules of Criminal Procedure, which was denied.

- 4 -

decision was clearly erroneous.  *Jenison*, 442 A.2d at 875; *see also State v. Ouimette*, 415 A.2d 1052, 1053 (R.I. 1980).

## B

### Statutory Construction

This Court reviews questions of statutory construction *de novo*.  *State v. Diamante*, 83 A.3d 546, 548 (R.I. 2014).  "[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings."  *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I. 1996).  However, if a statute is determined to be ambiguous, we "apply the rules of statutory construction and examine the statute in its entirety to determine the intent and purpose of the Legislature."  *Tarzia v. State*, 44 A.3d 1245, 1252 (R.I. 2012) (quoting *Kingston Hill Academy v. Chariho Regional School District*, 21 A.3d 264, 271 (R.I. 2011)).

### Analysis

Before this Court, the state argues that the trial justice erred when he declared that defendant could not have violated §§ 31-27-1.2 and 31-27-2.6, or § 31-11-18 because defendant—a back-seat passenger—was not operating or driving the motor vehicle when he suddenly grabbed the steering wheel and turned the wheel, causing the vehicle to veer out of control and roll over, leading to catastrophic injuries.

The defendant contends that the "actual physical control" language found in the statutory definition section, G.L. 1956 § 31-1-17(c) and (d), for the terms "driver" and "operator" is not applicable to the offenses charged in the criminal information at hand.  To support this contention, defendant submits that the General Assembly amended § 31-27-2(a),[6] which governs

---

[6] *See* P.L. 1982, ch. 176, § 1

driving under the influence of liquor or drugs, by deleting the phrase "actual physical control" from the statute. Thus, defendant argues that by deleting the phrase "actual physical control" from § 31-27-2(a), the Legislature intended that all driving offenses set forth in chapter 27 of title 31 require more than momentary control of a vehicle to qualify as a driving offense.

This Court has not been called upon to address whether a passenger in a moving vehicle who forcibly seizes the steering wheel has exercised sufficient control of the vehicle to be deemed a "driver" or "operator" under the reach of chapter 27 of title 31. Thus, this appeal solely rests on the precise question of whether the terms "operating" or "driving," under §§ 31-27-1.2, 31-27-2.6 and 31-11-18, can encompass a passenger in a moving motor vehicle who suddenly seizes the wheel from the driver and steers the vehicle.

We begin our analysis by examining the statutory definitions of "driver" and "operator" under chapter 1 of title 31, entitled "Definitions and General Code Provisions." Significantly, § 31-1-2, entitled "[a]pplicability of definitions," provides: "[e]xcept as otherwise provided, the following definitions of the words and phrases in this chapter *apply throughout this title.*" (Emphasis added.) Turning to § 31-1-17, the term "[d]river" in § 31-1-17(c) is defined as:

> "any operator or chauffeur who drives or is in actual physical control of a vehicle."

The term "operator" in § 31-1-17(d) is defined as:

> "*every* person, other than a chauffeur, who drives *or* is in actual physical control of a motor vehicle upon a highway or who is exercising control over or steering a vehicle being towed by a motor vehicle." (Emphasis added.)

In accordance with our well-settled practice of statutory construction, we first determine whether these statutory definitions, by their plain language, are clear and unambiguous. *See Diamante*, 83 A.3d at 550. After careful review of the relevant sections for driving offenses, as

well as the statutory definitions of "operator" and "driver," we are satisfied that § 31-1-17(c) and § 31-1-17(d) are indeed clear and unambiguous. Section 31-1-17 provides for *two* types of operators: the driver or a person who is in actual physical control of the vehicle. Accordingly, we are of the opinion that, in certain circumstances, an operator may be distinct and separate from a driver.

The defendant cites *State v. Capuano*, 591 A.2d 35 (R.I. 1991) in support of his argument that momentary control is not sufficient to support a finding that a person is operating or driving a motor vehicle for purposes of the statute governing driving under the influence. In that case, however, the sole issue before this Court was whether an intoxicated individual should be considered to have been driving or operating a motor vehicle when he was on a vehicle with the motor running but the vehicle was idling. In holding that the defendant was not operating or driving a motor vehicle, the *Capuano* Court reasoned that "[u]nder a strict construction of the post amendment language of § 31-27-2(a) in favor of [defendant], it becomes clear that the Legislature, in removing the actual physical control language from the section, intended that more than simple possession of a motor vehicle was necessary to constitute operating or driving." *Capuano*, 591 A.2d at 37. Our decision in *Capuano* is distinguishable from the case on appeal because *Capuano* dealt with mere possession of a motor vehicle that was running, but not moving. *Id.* In the case at bar, defendant was not in mere possession of the motor vehicle. Rather, defendant seized control of a moving vehicle when he jumped up from the backseat, grabbed the steering wheel—thus divesting the driver of control—and steered the vehicle off the highway causing a roll-over crash. For these reasons, we deem *Capuano* unavailing. *See id.*

Equally unpersuasive is the case *State v. Morris*, 666 A.2d 419 (R.I. 1995) (mem.). The Court in *Morris*, relying on the Connecticut case, *State v. Townsend*, 294 A.2d 650 (Conn. 1972),

held that a "person 'operates' a motor vehicle * * * when in the vehicle he [or she] intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle." *Morris*, 666 A.2d at 419 (quoting *Townsend* 294 at 652). In *Morris*, we concluded that the trial justice was correct in finding that an individual was in violation of operating a motor vehicle without a license when he or she knowingly and purposefully turned on the ignition of the vehicle and set it in motion. *Id.* at 419-20. We are satisfied that *Morris* and the case before us are miles apart because defendant forcibly seized the steering wheel of a moving vehicle from the driver *who had already set the car in motion*.

Accordingly, we conclude that the conduct alleged in this case falls within the definition of "operating" as set forth in § 31-1-17; and, because there is no specific statutory exception that excludes offenses under §§ 31-27-1.2, 31-27-2.6, and 31-11-18 from the ambit of § 31-1-17, this definition applies. By forcibly controlling and altering a fundamental feature of a moving vehicle—such as steering the direction of the vehicle—defendant placed himself squarely in the realm of an operator of a vehicle. Therefore, we conclude that this conduct can support a prosecution for violating §§ 31-27-1.2, 31-27-2.6, and 31-11-18.

We further note that we are not alone in this holding. Our research has revealed that when confronted with this issue, jurisdictions across the country have reached similar conclusions. *See State v. Rivera*, 83 P.3d 69, 74 (Ariz. Ct. App. 2004) (holding a passenger grabbing and turning a steering wheel assumed actual physical control for purposes of DUI statute); *State v. Sanchez*, 296 P.3d 1133, 1137 (Kan. Ct. App. 2013) (an intoxicated individual in a motor vehicle can operate or be in actual physical control in violation of DUI statute by grabbing the steering wheel); *People v. Yamat*, 714 N.W. 2d 335, 339-40 (Mich. 2006) (holding

that grabbing and turning the steering wheel causing the vehicle to veer off roadway is considered operating a motor vehicle); *City of Columbus v. Freeman*, 908 N.E. 2d 1026, 1029-30 (Ohio Ct. App. 2009) (holding that grabbing a steering wheel from the passenger seat causing the vehicle to crash fits within the definition of "operate"); *Dugger v. Commonwealth of Virginia*, 580 S.E. 2d 477, 481 (Va. Ct. App. 2003) (holding that, by forcibly grabbing and turning a steering wheel, the accused is considered to be operating a motor vehicle); *In re Arambul*, 683 P.2d 1123, 1125 (Wash. Ct. App. 1984) (holding that actual physical control includes momentarily grabbing the steering wheel).

## Conclusion

For the reasons set forth above, we vacate the judgment of the Superior Court. The papers in this case may be remanded to the Superior Court for further proceedings.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Luke P. Peters. |
| **Case Number** | No. 2016-113-C.A. (P2-2015-98A) |
| **Date Opinion Filed** | November 14, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Robert D. Krause |
| **Attorney(s) on Appeal** | For State:<br><br>Aaron L. Weisman<br>Department of Attorney General<br><br>For Defendant:<br><br>Megan F. Jackson<br>Department of Attorney General |